UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NAHANT PRESERVATION TRUST, INC. and its Directors, Officers, Trustees, Committee Members and/or Volunteers: CHRISTIAN BAUTA, TESS BAUTA, ELIZABETH K. BERMAN, ANNE BROMER, CANDACE CAHILL, MICHELLE CAPANO, ALICE CORT, MARK CULLINAN, CARL KENKINS, MARILYN MAHONEY, WILLIAM MAHONEY, DAN MCMACKIN, DIANE MONTEITH, ANDREA MURPHY, JEFFREY MUSMAN, PATRICK O'REILLY, MARIE ELIZABETH PASINSKI, M.D., ROGER PASINSKI, M.D., VI PATEK, LINDA PIVACEK, EMILY POTTS, LAURA POULIN, PETER ROGAL, PEGGY SILVA, SUSAN SOLOMON, PH.D, PAUL SPIRN, DONNA STEINBERG, and JIM WALSH, <br><br> Plaintiffs, <br><br> v. <br><br> MOUNT VERNON FIRE INSURANCE COMPANY and UNITED STATES LIABILITY INSURANCE GROUP, <br><br> Defendants. | CIVIL ACTION NO.  1:22-cv-10486 |

**THE DEFENDANTS MOUNT VERNON FIRE INSURANCE COMPANY AND
UNITED STATES LIABILITY INSURANCE GROUP'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

The Defendants Mount Vernon Fire Insurance Company and United States Liability Insurance Group (collectively, "USLI") respectfully submit this Memorandum of Law in support of their Motion to Dismiss all claims against them in this action pursuant to Fed. R. Civ. P. 12(b)(6)

1

for failure to state a claim upon which relief can be granted. The relevant documents on which this Motion is based are attached to the Complaint in this action as Exhibits.

## INTRODUCTION

This is an insurance coverage dispute in which the Plaintiffs allege that USLI has failed to defend and/or indemnify them under a Nonprofit Management Liability Policy for a lawsuit captioned *Northeastern University v. Nahant Preservation Trust, et al.,* Civil Action No. MISC 19000390, pending in the Massachusetts Land Court (the "*Northeastern Action*"). As set forth herein, the Complaint fails to state a claim against USLI because the *Northeastern Action* was not reported to USLI in accordance with the relevant claims made policy's notice provision.

## FACTUAL BACKGROUND

**A.     The Policies**

Mount Vernon issued the following Nonprofit Management Liability Policies to NPT: Policy No. NDO2557425 for the Policy Period of June 19, 2018 to June 19, 2019 (the "2018 Policy"); Policy No. NDO2557425A for the Policy Period of June 19, 2019 to June 19, 2020 (the "2019 Policy"); Policy No. NDO2557425B for the Policy Period of June 19, 2020 to June 19, 2021 (the "2020 Policy"); and Policy No. NDO2557425B for the Policy Period of June 19, 2021 to June 19, 2022 (the "2021 Policy") (collectively, the "Policies"). (The Complaint, Exs. 1 – 4). All of the Policies are subject to a limit of liability of $1 million each Claim and in the aggregate. (The Complaint, ¶ 21). Relevant to the instant Motion is the 2019 Policy. Beginning with the 2019 Policy's Declarations Page, it contains the following notice:

> PLEASE READ YOUR POLICY CAREFULLY.
>
> THIS IS A CLAIMS MADE POLICY COVERAGE FORM AND UNLESS OTHERWISE PROVIDED HEREIN, THE COVERAGE OF THIS FORM IS LIMITED TO LIABILITY FOR CLAIMS FIRST MADE DURING THE POLICY PERIOD, OR THE

>> EXTENSION PERIOD, IF APPLICABLE. DEFENSE COSTS SHALL BE APPLIED AGAINST THE RETENTION.

(The Complaint, Ex. 3 at pg. 3). Likewise, the General Terms and Conditions of the 2019 Policy contain a similar notice which states:

> **NOTICE:** This is a Claims Made Policy. This means the **Company** will cover only those **Claims** first made against the **Insured** during the **Policy Period** or, where applicable, the Extended Reporting Period.

(The Complaint, Ex. 3 at pg. 33). The 2019 Policy defines **Policy Period** as:

> the period of time from the effective date and time of this **Policy** to the date and time of expiration as shown in the Policy Declarations, or its earlier cancellation or termination date. If the length of the **Policy Period** is the same as the **Policy Year**[1], the terms **Policy Period** and **Policy Year** are used interchangeably herein.

(The Complaint, Ex. 3 at pg. 33). The Insuring Agreements of the 2019 Policy provide that Mount Vernon will pay "**Loss** and **Defense Costs** resulting from a **Claim** first made...during the **Policy Period**, or Extended Reporting Period, if applicable[.]" Section V. of the 2019 Policy's General Terms and Conditions, entitled "NOTICE AND CLAIM REPORTING PROVISIONS", provides, in relevant part that:

> 1. As a condition precedent to exercising any right to coverage under this **Policy**, the **Insured** shall give to the **Company** written notice of a **Claim** as soon as practicable after any Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Chairperson, Executive Director, Human Resources Manager, In-House General Counsel, Managing

---

[1] **Policy Year** is defined as:

> the period of one (1) year following the effective date of the **Policy Period** or any subsequent one-year anniversary thereof; or
>
> In the event the **Policy** expires less than one (1) ear following the effective date of the **Policy Period**, or more than one (1) year but less than two (2) years following the effective date of the **Policy Period**; then **Policy Year** shall mean any such period.
>
> (The Complaint, Ex. 3 at pg. 33).

>> Member or Fiduciary of any **Plan** becomes aware of such **Claim**, however:
>
> a.  If the **Policy** expires, is cancelled or is non-renewed and no Extended Reporting Period is purchased, no later than ninety (90) days after the expiration date of the effective date of such cancellation or non-renewal[.]

(The Complaint, Ex. 3 at pg. 40).

The 2019 Policy was issued with an endorsement entitled **AMENDMENT OF PRIOR OR PENDING LITIGATION EXCLUSION** (the "Prior or Pending Litigation Endorsement") which provides, in relevant part that:

> [i]t is hereby agreed that the Directors and Officers **Coverage Part**, Section IV. EXCLUSIONS, Subsection A. "Prior or Pending Litigation is deleted and replaced by the following:
>
> Any litigation, demand, claim, arbitration, decree, judgment, proceeding, or investigation against any **Insured**, or any such action based upon the same or essentially the same facts, circumstances, matters, situations, transactions or events underlying or alleged therein which was pending on or prior to the effective date of this **Policy**;
>
> provided that, if this **Policy** is a renewal of a **Policy** previously issued by the **Company** in a continuous succession of **Policies** with no lapses in coverage, the effective date of this **Policy** will mean the effective date of the first **Policy** issued by the **Company** in such succession of **Policies**.

(The Complaint, Ex. 3 at pg. 31). The Prior or Pending Litigation Endorsement concludes by stating that "[a]ll other terms and conditions of this **Policy** remain unchanged." (The Complaint, Ex. 3 at pg. 31).

B.  The Underlying Actions

According to the Complaint, Nahant Preservation Trust, Inc. ("NPT") is a nonprofit with a mission to "protect the open spaces, historically significant properties, and conservation lands of

[Nahant.]" (The Complaint, ¶ 11). Northeastern University ("Northeastern") owns most of the land on Nahant's East Point peninsula and constructed a marine science center on its land there. (The Complaint, ¶¶ 12-13). Northeastern also dedicated 12.5 acres of East Point as an ecological preserve. (The Complaint, ¶ 15). However, in 2018, Northeastern announced a proposal to develop its land on East Point further by building a 55,000 square foot building. (The Complaint, ¶ 17). Soon thereafter, Northeastern "began cutting down trees and otherwise disturbing the natural habitat of the Ecological Preserve[.]" (The Complaint, ¶ 17). NPT notified Northeastern that it believed that East Point ecological preserve is protected by Article 97 of the Articles of Amendment to the Massachusetts Constitution and therefore required the approval of the Massachusetts legislature before it could begin construction. (The Complaint, ¶¶ 15, 18). In response, Northeastern filed the *Northeastern Action* on August 9, 2019, and sought, among other relief, a declaration as to whether East Point is subject to Article 97. (The Complaint, ¶ 19). In turn, NPT filed a separate lawsuit captioned *Nahant Preservation Trust, et al. v. Northeastern University*, Civil Action No. 1977CV001211, Essex County Superior Court (the "*NPT Action*") which sought "an injunction to enforce appropriate environmental regulations[.]"[2] (The Complaint, ¶ 20).

C.  **USLI's Coverage Position**

Inexplicably, even though the *Northeastern Action* was filed on August 9, 2019 (during the **Policy Period** of the 2019 Policy), it was not reported to USLI until July 27, 2021, nearly two years later, when NPT's counsel sent a letter to USLI putting them on notice of the *Northeastern Action*. (The Complaint, ¶ 56). USLI responded by letter dated August 3, 2021 and informed NPT that coverage was unavailable under the Policies because: (1) the *Northeastern Action* was not a

---

[2]    The *Northeastern Action* and the *NPT Action* have since been consolidated. (The Complaint, ¶ 21).

claim first-made during the most recent Policy Period; and (2) the *Northeastern Action* was not reported within 90 days of the expiration of the 2019 Policy as required by the 2019 Policy's General Terms and Conditions. (The Complaint, ¶ 57, Ex. 6). By letter dated August 6, 2021, NPT disputed USLI's declination of coverage and argued that the Prior or Pending Litigation Endorsement changes the effective date of the **Policy Period** of the Policies to June 19, 2018, the inception date of the first in time 2018 Policy. (The Complaint, ¶ 60, Ex. 7). After consideration of NPT's position, USLI reiterated its declination of coverage by email dated August 25, 2021. (The Complaint, ¶ 61, Ex. 8).

## ARGUMENT

### I.     Legal Standard For A Motion To Dismiss

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 679. This standard of pleading does not require detailed factual allegations but does require more than labels and conclusions. *See Twombly*, 550 U.S. at 545. However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Evans v. Boston Red Sox*, No. CIV.A. 13-13259-GAO, 2014 WL 4966081, at *2 (D. Mass. Sept. 30, 2014) (citing *Iqbal*, 556 U.S. at 678).

Because the Policies and coverage correspondence are attached to the Complaint in this action as exhibits, the Court can consider the scope of the coverage afforded in the context of a

Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).  *See Pollak v. Federal Insurance Company*, 2013 WL 6152335 at n. 1 (D. Mass., Nov. 21, 2013) ("On motions to dismiss, courts can properly take into account documents attached to or incorporated into the complaint"); *MIB Group, Inc. v. Federal Insurance Company*, 473 F. Supp. 2d 142, 144 (D. Mass. 2006) (in considering the merits of a motion to dismiss, the court may look to documents attached as exhibits or incorporated by reference in the complaint).  "Under Massachusetts law, insurance-contract interpretations pose legal issues for resolution by the court, and, absent ambiguity, insurance contracts are to be enforced in accordance with their plain language."  *Utica Mut. Ins. Co. v. Weathermark Investments, Inc.*, 292 F.3d 77, 80 (1st Cir. 2002); *Vermont Mut. Ins. Co. v. Petit*, 613 F. Supp. 2d 154, 158 (D. Mass. 2009).  Under this framework:

> [i]nsurance policies should be construed as a whole without according undue emphasis to any particular part over another. Only where a contractual term is ambiguous does its interpretation pose a question of fact... An insurance contract is to be interpreted according to the fair and reasonable meaning of the words in which the agreement of the parties is expressed. The construction of contracts involving insurance is no different a task from interpreting any other contract; the words of the policy must be construed in their usual and ordinary sense.

*Strange v. Genesis Ins. Co.*, 536 F. Supp. 2d 71, 74 (D. Mass. 2008) (internal quotations and citations omitted).

II. **The Complaint Fails To State A Claim Against USLI Because The *Northeastern Action* Was Not Reported In Accordance With The 2019 Policy's Notice Provision**

As noted above, the 2019 Policy conspicuously states multiple times that it is a "claims-made" policy. Massachusetts courts have interpreted such policies in the past and stated that a "claims-made policy covers the insured for claims made during the policy year and reported within that period or a specified period thereafter regardless of when the covered act or omission

7

occurred." *Chas. T. Main, Inc. v. Fireman's Fund Ins. Co.*, 406 Mass. 862, 863-64 (1990). In the seminal case of *Chas T. Main, Inc.*, the Supreme Judicial Court explained that:

> [t]he purpose of a claims-made policy is to minimize the time between the insured event and the payment. For that reason, the insured event is the claim being made against the insured during the policy period and the claim being reported to the insurer within that same period or a slightly extended, and specified, period. If a claim is made against an insured, but the insurer does not know about it until years later, the primary purpose of insuring claims rather than occurrences is frustrated. Accordingly, ***the requirement that notice of claim be given in the policy period or shortly thereafter in the clams-made policy is of the essence in determining whether coverage exists. Prejudice for an untimely report in this instance is not an appropriate inquiry.***

*Id*. at 865 (emphasis supplied with bolding and italics). Following *Chas. T. Main, Inc.*, Massachusetts courts have repeatedly held that an insurer does not need to establish prejudice in order to deny coverage under a claims-made policy based on late notice. *Gargano v. Liberty Intern. Underwriters, Inc.*, 572 F.3d 45, 51 (1st Cir. 2009) (rejecting argument that insurer must demonstrate prejudice under claims made policy because it "would defeat the fundamental concept on which claims-made policies are premised, with the likely result that claims-made policies, which offer substantial benefits to purchasers of insurance as well as insurance companies, would vanish from the scene.") (Internal citations and quotations omitted); *Cranwell, Ltd. Partnership v. Tokio Marine & Nichido Fire Ins. Co.*, Ltd., 874 F. Supp.2d 41, 49 (D. Mass. 2012) ("Under a 'claims made' policy, timely compliance with the policy's reporting requirement will be a strict condition of obtaining coverage. The insurer is not required to show prejudice to deny coverage for late notice.").

The present matter is analogous to *Tenovsky v. Alliance Syndicate, Inc.*, 424 Mass. 678 (1997) and the same result is dictated. There, the plaintiff was an ironworker who was injured at a jobsite and alleged that his injuries were due to G&H Steel. *Id*. G&H Steel was insured by the

8

defendant, Alliance Syndicate, under a claims made policy. *Id*. at 678-80. The policy provided that it would provide coverage for bodily injury claims first made during its policy period and required that the insured give "prompt written notice" of the claim. *Id*. at 680. The insured received a letter from the plaintiff in June and July of 1988, which was within the policy period, alerting G&H Steel to his claim for bodily injury. *Id*. However, the insured did not forward the letter or notify Alliance of the claim until the plaintiff filed suit on December 17, 1990, which was a year and a half after the policy period expired. *Id*. The Supreme Judicial Court held that the insured failed to provide prompt notice of the claim and reasoned that:

> [s]urely, 'prompt' notice of 'claims made' requires that notice to the insurer be given no later than sixty days following the expiration of the policy period. This policy in this case, then, calling for promptness in notification, is not materially different from the policy considered in *Chas. T. Main, Inc*. Both policies require that the claim, the insured event, be reported to the insurer during the policy period or at least promptly after its expiration...No further determination of prejudice to the insurer need be made.

*Id*. at 681.

The instant matter presents an even stronger application of *Chas. T. Main., Inc*. than *Tenovsky*. First and foremost, the **Policy Period** of the 2019 Policy was from June 19, 2019 to June 19, 2020. The *Northeastern Action* is a claim that was first made during the **Policy Period** of the 2019 Policy as it was filed on August 9, 2019.[3] Per the 2019 Policy's notice provision, NPT had to report the *Northeastern Action* "no later than ninety (90) days after the expiration date" of the 2019 Policy. Thus, unlike the policy in *Tenovsky*, the 2019 Policy explicitly provides a timeframe for which NPT must report a claim. As such, NPT had until September 17, 2020 to

---

[3] To the extent that NPT argues that it is entitled to coverage under the 2021 Policy, which was the **Policy Period** in which it reported the *Northeastern Action* to USLI, this argument would also fail. As noted above, each of the Policies is a claims-made policy. The *Northeastern Action* was a claim first made on August 9, 2019 which was before the inception of the 2021 Policy. Thus, the *Northeastern* Action does not trigger coverage under the 2021 Policy as it was not a claim first made in its **Policy Period**.

report the *Northeastern Action* to USLI. However, NPT effectively concedes in their Complaint that they did not do so as "NPT's counsel sent a letter to USLI ***dated July 27, 2021 giving USLI notice of the Claims asserted by Northeastern in the Northeastern [ ] Action[.]***" (Emphasis supplied with bolding and italics). It is therefore undisputed that NPT did not report the *Northeastern Action* until over a year after the **Policy Period** of the 2019 Policy expired. As such, NPT did not comply with this condition precedent to coverage as its notice was untimely where it did not provide it within ninety days of the expiration of the 2019 Policy Period. Under *Chas. T. Main., Inc.*, this is the end of the inquiry as USLI is not required to show that it was prejudiced by NPT's late notice where the 2019 Policy is a claims made policy *See Chas. T. Main, Inc.*, 406 Mass. at 865. For these reasons, NPT's Complaint fails to state a claim against USLI upon which relief may be granted because NPT did not provide timely notice as required by the 2019 Policy.

**III.    The Amendment Of The Prior Or Pending Litigation Exclusion Endorsement Does Not Alter The Policy Period Of The 2019 Policy Or The Notice Provision.**

Despite its undeniable untimely notice, NPT attempts to salvage its meritless claim for coverage by asserting in its Complaint that the Prior or Pending Litigation Endorsement provides that:

> so long as the continuous succession of Policies is not broken by a lapse in coverage, a Claim that is first asserted after the 'effective date' of Policy 1 may be reported at any time before the continuous succession of policies lapses, in order to satisfy the reporting requirements for coverage.

(Complaint at ¶ 51). This assertion flies in the face of not only the plain language of the 2019 Policy but longstanding Massachusetts precedent concerning the interpretation of insurance policies. It is well established that "[i]nsurance policies should be construed as a whole without according undue emphasis to any particular part over another." *Strange*, 536 F. Supp. 2d at 74. With this in mind, NPT's reading of the Prior or Pending Litigation Endorsement does not

withstand even the lightest of scrutiny. For starters, NPT's interpretation of the Prior or Pending Litigation Endorsement has no basis in its intended purpose. The First Circuit has explained that:

> prior and pending litigation exclusions promote the giving of prompt notice and [ ] avoid stacking the limits of successive policies to cover essentially the same or very closely related claims. Prior and pending litigation exclusions thus combat the problem of adverse selection or insuring the building already on fire; that is, an insured who has previously been sued faces a greater risk of related litigation and has a corresponding incentive to seek insurance. The insurance company's legitimate interest in combating the adverse selection problem is properly implicated when there is a real and substantial overlap with the complaint in the prior lawsuit, as opposed to an incidental or fortuitous relationship to the prior complaint.

*Fed. Ins. Co. v. Raytheon Co.*, 426 F.3d 491, 499–500 (1st Cir. 2005) (Internal citations and quotations omitted). The Prior or Pending Litigation Endorsement has nothing to do with altering the **Policy Period** or expanding the timeframe in which an insured must provide notice of a claim but rather serves to prevent the stacking of insurance policies to cover separate lawsuits which arise out of a common set of facts. NPT's interpretation must be rejected as it directly contravenes its purpose and, in essence, advocates for what prior or pending litigation exclusions are designed to prevent.

In addition, the Prior or Pending Litigation Endorsement makes clear that "the Directors and Officers **Coverage Part**, Section IV. EXCLUSIONS, Subsection A. "Prior or Pending Litigation is deleted and replaced by the following…" and that "[a]ll other terms and conditions of this **Policy** remain unchanged." Thus, the Prior or Pending Litigation Endorsement itself makes clear that it changes only the language of Exclusion A. and that "all other terms and conditions" of the 2019 Policy remain unchanged. There is nothing in the Prior or Pending Litigation Endorsement that changes the 2019 Policy's definition of **Policy Period** or the notice provision found in the Notice and Claims Reporting Provisions of the 2019 Policy. As such, NPT's

11

interpretation of the Prior or Pending Litigation Endorsement is entirely unreasonable as it asks this Court to rewrite the 2019 Policy and insert language into the Prior or Pending Litigation Endorsement and the terms of the 2019 Policy which are nowhere to be found. *See Jalbert as Trustee of the F2 Liquidating Trust v. Zurich Services Corporation*, 953 D.3d 143, 154 (1st Cir. 2020) ("Because adopting Jalbert's view would require us to rewrite the policy in a way that would change the terms of coverage, we refuse to do so."); *Mount Vernon Fire Ins. Co. v. VisionAid, Inc.*, 91 F. Supp.3d 66, 72 (D. Mass. 2015) ("Forcing Mount Vernon to fund VisionAid's affirmative counterclaims seeking monetary damages for the alleged misappropriation by Sullivan would fundamentally rewrite the Policy. The Court declines to do so."). Therefore, NPT's argument must be rejected as it has no basis in the plain language of the 2019 Policy or the Prior or Pending Litigation Endorsement.[4]

Moreover, NPT's assertion is nothing more than a disguised argument that has already been rejected by the First Circuit. In *National Union Fire Ins. Co. v. Talcott*, 931 F.2d 166 (1st Cir. 1991), the insured under a claims made policy argued that he was entitled to coverage notwithstanding his failure to comply with the policy's reporting requirements because he was insured under a successive series of claims made policies by the same insurer. *Id*. at 168. The First Circuit rejected the insured's argument and held:

> [t]he argument fails for the simple reason that **continuous coverage was wholly immaterial to the underlying rationale of** *Main*. The essence of that decision was the right of the insurer to set its future

---

[4] NPT makes a faint argument that the "Policies use a variety of different, undefined, terms intended to indicate the date on which the 'Policy Period'…begins…To the extent that such differences and conflicts create an ambiguity in the meaning of the term 'Policy Period', that ambiguity must be strictly construed against USLI." (Complaint, ¶ 52). This argument ignores longstanding precedent in Massachusetts insurance law, including the principle that "an ambiguity does not exist simply because the parties disagree about how to interpret the policy." *U.S. Liability Ins. Co. v. Benchmark Const. Services, Inc.*, 797 F.3d 116, 120 (1st Cir. 2015). Rather, an ambiguity only exists in insurance contracts if a term is "susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one." *Citation Ins. Co. v. Gomez*, 426 Mass. 379, 381 (1998). However, as detailed above, NPT does not even offer a reasonably intelligent interpretation of the Prior or Pending Litigation Endorsement as its interpretation conflicts with the plain language of the endorsement.

>premiums and reserves with full knowledge of the outstanding claims it is obligated to meet, and ***this circumstance requires strict adherence to the notice requirement regardless of whether the same company continued to provide coverag***e (through a different policy) at the date the notice was received.

*Id*. at 168-69 (emphasis supplied with bolding and italics).

Just as in *Talcott*, it is wholly immaterial in the instant matter that USLI continually insured NPT under the Policies. The 2019 Policy requires strict compliance with its notice requirement as it explicitly states that it is a condition precedent to coverage under the 2019 Policy. Yet, as discussed above, it is undisputed that NPT failed to comply with the notice requirements under the 2019 Policy. NPT's assertion once again asks the Court to completely rewrite the Policies and turn them into one omnibus policy. Under *Talcott,* this is not permitted. Thus, NPT's Complaint fails for this reason as well and it must be dismissed.

## **CONCLUSION**

For the foregoing reasons, USLI respectfully requests that its Motion to Dismiss be ALLOWED and that all claims against Mount Vernon and USLI be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

Respectfully submitted,

MOUNT VERNON FIRE INSURANCE
COMPANY and UNITED STATES
LIABILITY INSURANCE GROUP

By their attorneys,

*/s/ Lincoln A. Rose*
Scarlett M. Rajbanshi, BBO#666103
Lincoln A. Rose, BBO#691797
Peabody & Arnold LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
(617) 951-2011
srajbanshi@peabodyarnold.com
lrose@peabodyarnold.com

Dated: April 15, 2022

**CERTIFICATE OF SERVICE**

I, Lincoln A. Rose, hereby certify that I have, on April 15, 2022 served a copy of the foregoing document, by causing a copy thereof, to be sent electronically, through the ECF system, to the registered participants in this case, as identified on the Notice of Electronic Filing (NEF). Participants in this case not registered on the ECF system, if any, will receive service through regular first-class mail.

*/s/ Lincoln A. Rose*
Lincoln A. Rose

2316827v2