UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NAHANT PRESERVATION TRUST, INC., and its Directors, Officers, Trustees, Committee Members, et al.<br><br>Plaintiffs,<br>v.<br><br>MOUNT VERNON FIRE INSURANCE COMPANY and UNITED STATES LIABILITY INSURANCE GROUP,<br><br>Defendants. | )<br>)<br>)<br>) CIVIL ACTION NO. 1:22-cv-10486 (LTS)<br>)<br>) **REQUEST FOR ORAL ARGUMENT**<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiffs, Nahant Preservation Trust, Inc., and its Directors, Officers, Trustees, and Committee Members named in its Complaint (collectively "Nahant") oppose Defendants' Mount Vernon Fire Insurance Company and United States Liability Insurance Group (collectively "USLI" or "Defendants") Motion to Dismiss the Complaint ("Motion") for the reasons explained below.

## INTRODUCTION

USLI's Motion fails to acknowledge that Nahant's Complaint clearly identifies and articulates an ambiguity in the operative exclusion as amended, namely, the correct interpretation of the Amendment of Prior or Pending Litigation Exclusion ("Prior Pending Exclusion Amendment") found in the continuous succession of Non Profit Management Liability Policies issued to Nahant by USLI in 2019, 2020, and 2021 renewing without a lapse in coverage the Policy issued to Nahant by USLI in 2018. It is Nahant's position as patently supported by the Prior Pending Exclusion Amendment that the language of the Prior Pending Exclusion Amendment changes the meaning of the term "effective date" and, by necessary implication, the length of the Policy Period of the relevant Policies issued by USLI.

1

USLI's arguments all are based upon the concept that Nahant is only seeking, or entitled to, coverage under the 2019 Policy, but that is incorrect. Nahant contends that the clear language of the Prior Pending Exclusion Amendment changes the meaning of the effective date, and thus the definition of Policy Period, which in turn impacts when operative events and reporting need to have taken place to trigger coverage. Because all of the Policies that contain the Prior Pending Exclusion Amendment have an effective date of 06/19/2018, Nahant's contention that its notice of claim, given while the 2021 Policy was on the risk, is correct. Whether Nahant's argument that it complied with the notice requirement of the Policies is correct, as it contends, or whether USLI's claim that Nahant failed to comply is correct, cannot be determined without ascertaining when the beginning (effective date) and end of the Policy Period are, and that is the exact issue affected by the language of the Prior Pending Exclusion Amendment.

Nahant's interpretation of the Prior Pending Exclusion Amendment as set forth in the Complaint is rational. Nahant's claim, which was reported to USLI on July 27, 2021, was properly reported during the Policy Period of the 2021 Policy, because all of the Policies, including the 2021 Policy, have an effective date of 06/19/2018 and the 2021 Policy currently has an end date of 06/19/2022, due to the fact that the 2021 Policy is one of the continuous succession of Policies without a lapse in coverage to which the Prior Pending Exclusion Amendment refers. Thus the covered claim was first made and reported during the Policy Period. USLI does not offer an alternative meaning of the Prior Pending Exclusion Amendment, other than to vaguely suggest that the Prior Pending Exclusion Amendment is meant to prevent the stacking of limits of liability. (*See* Defendants' Memorandum of Law ("Defendants' Memo") at 11) ("The Prior or Pending Litigation Endorsement has nothing to do with altering the **Policy Period** or expanding the timeframe in which an insured must provide notice of a claim but rather serves to prevent the stacking of insurance policies to cover separate lawsuits which arise out of a common set of

facts."). (emphasis in original). <u>USLI thus implicitly acknowledges that the Policies in issue are, in fact, a continuous series of successive policies with no lapses in coverage.</u> This is a critical admission and demonstrates a justification for Nahant's rational interpretation of the Prior Pending Exclusion Amendment. However, USLI incorrectly characterizes the Prior Pending Exclusion Amendment as relating to the stacking of limits of liability, which Nahant has not alleged and of which there is no mention in the Policies. But USLI asserts this argument in the context of prior and pending litigation provisions in general, <u>not</u> in the context of the particular language of the Prior Pending Exclusion Amendment, and Nahant is not seeking multiple, or "stacked" limits of liability.

As will be shown below, controlling case law dictates that a motion to dismiss is properly denied where key policy terms are ambiguous and insufficient extrinsic evidence was available to interpret the terms' meaning, with all inferences viewed favorably towards the Plaintiff.

Assuming, without conceding, that USLI's alternative interpretation of the policy language is also rational, Nahant's interpretation must be accepted, because ambiguous policy language must be construed in favor of the insured. *New England Envt'l Techs. v. American Safety Risk Retention Group, Inc.*, 738 F. Supp. 2d 249, 254 (D. Mass. 2010); *see also Young v. Wells Fargo Bank, N.A.*, 717 F. 3d 224, 231-32 (1st Cir. 2013) ("When the contract's terms are 'ambiguous, uncertain, or equivocal in meaning, ... the intent of the parties is **a question of fact** to be determined at trial'") (emphasis supplied). Thus, USLI's Motion to Dismiss should be denied, and Nahant's Complaint should not be dismissed, as will be further addressed below.

<b><u>COUNTERSTATEMENT OF FACTS</u></b>

    A.    **The Policies.**

The relevant language of the Prior Pending Exclusion Amendment reads:

> Any litigation, demand, claim, arbitration, decree, judgment, proceeding, or investigation against any Insured, or any such action based upon the same or essentially the same facts, circumstances, matters, situations, transactions or events underlying or alleged therein which was pending on or prior to the effective date of this Policy;
>
> provided that, if this Policy is a renewal of a Policy previously issued by the Company in a continuous succession of Policies with no lapses in coverage, **the effective date of this Policy will mean the effective date of the first Policy issued by the Company in such succession of Policies.**

(Complaint, ¶ 31 & Exhibits 2, 3, and 4) (emphasis supplied). The Declarations page of the first Non Profit Management Liability Policy issued to Nahant by USLI states that the effective date of the Policy is "06/19/2018." (Complaint, Exhibit 1). The amendatory language to the Exclusion has a critical effect upon the interpretation of the Policies, because of the definition of "Policy Period" in the 2019, 2020, and 2021 Policies, which reads:

> **Policy Period** means the period of time from the effective date and time of this **Policy** to the date and time of expiration as shown in the Policy Declarations, or its earlier cancellation or termination date. If the length of the **Policy Period** is the same as the **Policy Year**, the terms **Policy Period** and **Policy Year** are used interchangeably herein.

Complaint & Exhibits 2, 3, and 4) (emphasis supplied).

As the Complaint and its exhibits indicate, USLI issued four Non Profit Management Liability Policies to Nahant: Policy Nos. NDO2557425 ("2018 Policy"), NDO2557425A ("2019 Policy"), NDO2557425B ("2020 Policy") and NDO2557425C ("2021 Policy")[1] in a continuous succession with no lapses in coverage. Although Defendants' summary of the Policies is in large part accurate, it contains significant errors about the language of the Policies that need to be recognized for purpose of their Motion to Dismiss.

First, USLI relies upon policy provisions that limit coverage to "those claims first made against the Insured during the Policy Period...." (Defendants' Memo at 3), but utterly fails to explain the effect

---

1   Defendants' Memo refers to the 2021 Policy as having policy number "NDO2557425B," which is incorrect; Nahant presumes that this is a typographical error.

4

of the Prior Pending Exclusion Amendment that, by its terms, changes the defined length of the Policy Period by changing the start, or effective, date. For example, USLI cites language from the 2019 Policy stating that the Policy Period is **"the period of time from the effective date and time of this Policy** to the date and time of expiration as shown in the Policy Declarations, or its earlier cancellation or termination date." (Complaint, Exhibit 3) (emphasis supplied). Since the Prior Pending Exclusion Amendment changes the effective date of the 2019, 2020, and 2021 Policies to "06/19/2018", reporting of Nahant's claim before the "time of expiration as shown in the Policy Declarations" for the 2021 Policy complies with the General Terms and Conditions as the claim was first made between the effective date and the end date of that Policy, and the claim was reported within that time period as well.

Second, the Policy Period definition contains another ambiguous term, **Policy Year.** USLI's footnote 1 states the definition of "Policy Year" as "**the period of one (1) year following the effective date of the Policy Period** or any subsequent one-year anniversary thereof...." (emphasis supplied) and then compounds the confusion by attempting to equate "Policy Period" and "Policy Year" in certain circumstances, stating:

> In the event the **Policy** expires less than one (1) year following the effective date of the **Policy Period**, or more than one (1) year but less than two (2) years following the effective date of the **Policy Period, then Policy Year shall mean any such period**.

Defendants' Memo. at 3 n.1 (emphasis supplied).

USLI attempts to imply that the Prior Pending Exclusion Amendment has no effect on the Policies' effective date by emphasizing the words "[a]ll other terms and conditions of this **Policy** remain unchanged" that appear at the very end of the Prior Pending Exclusion Amendment. (Defendants' Memo at 4.) That clause simply means that the Prior Pending Exclusion Amendment itself makes no changes other than those changes identified in the Prior Pending Exclusion Amendment itself. That clause does

not permit USLI to unilaterally choose when, and when not, to apply the content of the amendatory language.

USLI cannot ignore the Prior Pending Exclusion Amendment's change in the term "effective date" simply because that term does not appear in `the "Definitions" section of the Policies. To the contrary, "effective date" appears in both the definitions of "Policy Period" and "Policy Year", and is self-evidently critical to any determination of coverage. The amendatory change to the term "effective date" as utilized in identifying and calculating the Policy Period must be consistently applied and construed in the light of the whole Policy, not occasionally and haphazardly applied solely for USLI's benefit at the expense of Nahant, USLI's insured.

### B. The Underlying Actions.

USLI's summary of the facts of the Underlying Actions is, for purposes of resolving the issues raised in USLI's Motion to Dismiss, substantially accurate. Nahant reserves the right to raise any discrepancies between USLI's account in its summary of facts and the Complaint if such discrepancies become material to subsequent aspects of adjudicating this action.

### C. USLI's Coverage Position.

Stripped of language that inappropriately characterizes the timing of Nahant's notice of claim, USLI's description of the letters exchanged between USLI and Nahant's counsel before this lawsuit was filed contains several inaccuracies and is far from complete. For example, USLI's very brief summary of the parties' positions concerning coverage fails to include more than a bare acknowledgment of the rationale for Nahant's coverage demand. That rationale is as follows:

- The Declaration pages of all four of the Policies provide that "This is a Claims Made Policy Coverage Form and **unless otherwise provided herein**, the coverage of this form is limited to liability for Claims first made during the Policy Period, or the extension period, if applicable." (emphasis supplied). (Complaint, ¶44) (emphasis supplied). The 2019, 2020,

6

and 2021 Policies <u>do</u> "otherwise provide" by means of the Prior Pending Exclusion Amendment.

- The Prior Pending Exclusion Amendment provides that if "[a]ny litigation... " is pending "on or prior to the effective date of this **Policy**," the "effective date of this Policy will mean <u>the effective date of the first **Policy** issued by the **Company** in such succession of **Policies**</u>" so long as the Policy in effect is "a renewal of a **Policy** previously issued by the **Company** <u>in a continuous succession of Policies with no lapses in coverage</u>...." (underscore emphasis added; boldface emphasis in original). (Complaint, ¶50).

- A plain reading of the language of the Prior Pending Exclusion Amendment requires that a Claim first asserted after the "effective date" of the 2018 Policy may be reported at any time before the continuous succession of policies lapses. Which Policy responds to the Claim will thus depend upon when such Claim is reported. (Complaint, ¶51).

- The Policies use a variety of different, undefined, but critical and material terms intended to indicate the date on which the "Policy Period," and thus USLI's coverage obligations, begin, including the phrases "effective date," "inception date," and "the effective date set forth in ITEM II. of the Policy Declarations." These differences in critical wording create an ambiguity in the meaning of the term "Policy Period," and that ambiguity must be strictly construed against USLI. (Complaint, ¶52) (citing *Hakim v. Massachusetts Insurers Insolvency Fund*, 424 Mass. 275, 281-82, 675 N.E.2d 1161 (Mass. 1997)).

- Because none of the Policies have been cancelled or non-renewed, and the Policies constitute a continuous succession of Policies issued with no lapses in coverage, and all premiums have been duly paid to USLI, Plaintiffs have complied with all applicable material terms and conditions precedent and are entitled to coverage. (Complaint, ¶¶ 53-55).

USLI denied coverage, claiming that, under USLI's interpretation of the Policy language, Nahant did not report its claim during the Policy Period of the 2019 Policy. But USLI's denial ignores the fact that because of the Prior Pending Exclusion Amendment and the existence of a continuous succession of USLI Policies with no lapses in coverage, Nahant could, and did, timely report its claim during the Policy Period of the 2021 Policy consistent with all the General Terms and Conditions of that Policy.

## ARGUMENT

### I. Legal Standards Applicable To This Motion To Dismiss.

USLI does not contest that Nahant has correctly quoted the language of the Policies, but because policy interpretation is the major issue with regard to USLI's Motion, the correct standards to apply are

7

of great importance and deserve more attention than USLI has given them.[2] In general, Defendants' Memorandum correctly states the relevant legal standards applicable to a motion to dismiss. For example, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter that, accepted as true, state a claim to relief that is plausible on its face. "*Ashcroft v. Iqbal,* 556 U.S. 661, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S 544, 570 (2007)). Under the Federal Rules of Civil Procedure, all that is necessary for the Complaint to provide is "a short and plain statement of the claim showing that the pleader is entitled to relief." *Cardigan Mtn. School v. New Hampshire Ins. Co.,* 787 F. 2d 82, 84 (1st Cir. 2015) (citing Fed. R. Civ. P. 8(a) (2). To meet that standard, Plaintiffs do not need to demonstrate that they are likely to prevail on their claim; all they need to do is to provide enough factual detail to show that their claim is "plausible on its face." *Cardigan Mtn.,* 787 F. 2d at 84 (citing *Ashcroft v. Iqbal,* 556 U.S. 661, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S 544, 570 (2007)). In this case, the major issue is the interpretation of the Policies issued to Nahant, and whether the language of those Policies is ambiguous. Nahant's Complaint contains sufficient factual matter that must be accepted as true for purposes of a motion to dismiss; thus, Nahant's claim is plausible on its face and Defendants' motion must be denied.

Insurance contracts, like any other kind of contract, are subject to general rules of contract interpretation. *E.g., MIB Group, Inc. v. Federal Ins. Co.,* 473 F. Supp. 2d 142, 144 (D. Mass. 2006). Under Massachusetts law, an issue of insurance-contract interpretation is a legal issue for resolution by the court. *Utica Mutual Ins. Co. v. Weathermark Investments, Inc.,* 292 F.3d 77, 80 (1st Cir. 2002). When

---

2    Defendants' statement of the applicable standards contains numerous errors relating to the use of extrinsic evidence in construing policy language in a motion to dismiss. Those errors include, but are not limited to: attributing a correct quote to the wrong opinion issued in a particular case, *Evans v. Boston Red Sox,* 2014 U.S. Dist. LEXIS 139548 at *2 (D. Mass. Feb. 14, 2014) (quote incorrectly attributed to Sept. 30, 2014 opinion in the same case); and altering the meaning of a quote through omission, *MIB Group, Inc. v. Federal Insurance Co.,* 473 F. Supp. 142, 144 (D. Mass. 2006) (complete quote indicates that "[i]n considering a motion to dismiss, the court may look **only** to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken") (emphasis supplied), as well as typographical errors.

interpreting an insurance contract for purposes of resolving a motion to dismiss, the court may properly take into consideration **only** "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken." *MIB Group, Inc. v. Federal Ins. Co.*, 473 F. Supp. 2d 142, 144 (D. Mass. 2006). More importantly, this Court is required to "accept as true all well-pleaded facts in the Complaint and draw all reasonable inferences in favor of the plaintiffs," in this case, Nahant. *E.g., Gargano v. Liberty Int'l Underwriters*, 572 F.3d 45, 48 (1st Cir. 2009); *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013); *Lombardo v. Citimortgage, Inc.*, 2019 U.S. Dist. LEXIS 149008 at *2 (D. Mass. Mar. 4, 2019); *Grinnell Corp. v. Lebron & Assocs., Inc.*, 2011 U.S. Dist. LEXIS 75401 at *6 (D. Puerto Rico 2011).

Insurance policy language is ambiguous "when there is more than one rational interpretation of the relevant policy language," *Tocci Bldg. Corp. v. Zurich American Ins. Co.*, 659 F. Supp. 2d 251, 257 (D. Mass. 2009), but also "[a] contract is ambiguous if an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken." *O'Hara v. Standard Fire Ins. Co.*, No. 16-cv-12378-GAO, 2017 U.S. Dist. LEXIS 219749 at *9-*10 (D. Mass. Sep. 8, 2017); *accord NExTT Solutions, LLC v. XOS Techs., Inc.*, 113 F Supp. 3d 450, 457 (D. Mass. 2015).

If the language of the Policies as set forth in the Complaint is found to be ambiguous by this Court, that finding requires dismissal of USLI's Motion. *E.g., Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 231-32 (1st Cir. 2013) ("When the contract's terms are 'ambiguous, uncertain, or equivocal in meaning ... **the intent of the parties is a question of fact to be determined at trial.**") (emphasis supplied); *Lombardo v. Citimortgage, Inc.*, 2019 U.S. Dist. LEXIS 149008 at *14 (D. Mass. Mar. 4, 2019) ("On a motion to dismiss, **all contractual ambiguities are construed in plaintiffs' favor....**") (emphasis supplied) (citing *Young v. Wells Fargo Bank, supra*); *O'Hara v. Standard Fire Ins. Co.*, 2017

9

U.S. Dist. LEXIS 219749 at *14 (D. Mass. Mar. 30, 2018) (citing cases) (denying motion to dismiss where key policy term was ambiguous and insufficient extrinsic evidence was available to interpret the term's meaning); *NExTT Solutions, LLC v. XOS Techs., Inc.*, 113 F. Supp. 3d 450, 457-58 (D. Mass. 2015) (if court finds that an ambiguity in contract language exists, "the meaning of the uncertain language becomes a question of fact for which the trier of fact may consult extrinsic evidence"; motion to dismiss denied).

USLI's Memo says almost nothing about its interpretation of the Prior Pending Exclusion Amendment, and what it does say barely takes up half a sentence. According to USLI, the Prior Pending Exclusion Amendment "... serves to prevent the stacking of insurance policies to cover separate lawsuits which arise out of a common set of facts." (Defendants' Memo at 11).[3] USLI never explained how the Prior Pending Exclusion Amendment accomplishes this, either in its Motion to Dismiss or within the Policies themselves. There certainly is no reference in the Prior Pending Endorsement Amendment to limits of liability, stacked or otherwise. Rather, USLI apparently is referring here to the underwriters' purported <u>intent</u> in incorporating this language into the Policies, and as such it can only do so by reliance upon evidence of intent from outside the four corners of the Complaint. Here, USLI has not offered any evidence of the drafters' intent, and consideration of evidence outside the four corners of the Complaint is not appropriate at the motion to dismiss stage of this case. Because USLI has not, and cannot properly at this stage, supply purported extrinsic evidence of the intent of its policy language, USLI's Motion must be denied in light of the Prior Pending Exclusion Amendment's patent ambiguities. *Compare, e.g., O'Hara v. Standard Fire Ins. Co.*, 2017 U.S. Dist. LEXIS 219749 at *14 (D. Mass. Mar. 30, 2018) (citing cases) (denying motion to dismiss where key policy term was ambiguous and insufficient extrinsic

---

3   Nahant is not seeking to stack policy limits of liability; that is an unsubstantiated idea introduced by USLI in its Motion to Dismiss. *See* Introduction, pages 2-3 *supra* (quoting similar argument by USLI about the Prior Pending Exclusion Endorsement purportedly being an anti-stacking provision).

10

evidence was available to interpret the term's meaning); *NExTT Solutions, LLC v. XOS Techs., Inc.*, 113 F. Supp. 3d 450, 457 (D. Mass. 2015) (if court finds that an ambiguity in contract language exists, "the meaning of the uncertain language becomes a question of fact for which the trier of fact may consult extrinsic evidence"; motion to dismiss denied). "In considering the merits of a motion to dismiss, the court may look **only** to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken." *Aware, Inc. v. Centillium Communs., Inc.*, 604 F. Supp. 2d 306, 309 (D. Mass. 2009) (emphasis supplied). Furthermore the Court must accept all factual allegations in the Complaint as true and draw all reasonable inferences in the Plaintiffs' favor. If the facts in the Complaint are sufficient to state a cause of action, a motion to dismiss the Complaint must be denied. *MIB Group, Inc. v. Federal Ins. Co.*, 473 F. Supp. 2d 142, 144 (D. Mass. 2006).

In this case, Nahant has demonstrated in the Complaint that the Policies employ undefined terms as well as what can only be described as misleading and ambiguous provisions. USLI repeatedly claims, in conclusory fashion, that the Policies at issue are clear and unambiguous, but USLI fails to give a clear, supported statement as to what it believes the Prior Pending Exclusion Amendment means, as will be discussed in Section III below. This is a fatal flaw in USLI's argument.

## II. USLI's Argument That Nahant's Claim Was Not Timely Reported Relies Upon Inapposite Authorities.

Instead of addressing the ambiguity manifest in the Policies and identified in Plaintiffs' Complaint, USLI spends nearly three pages arguing that Nahant did not report its claim within the Policy Period of the 2019 Policy. Nahant, as well as this Court, is aware that to be covered under a "claims made" policy the claim must be made and reported during the policy period. However, USLI's own Policies acknowledge that "This is a Claims Made Policy Coverage Form and **unless otherwise provided herein**, the coverage of this form is limited to liability for Claims first made during the Policy Period...."

(Complaint, ¶44). Because of the effect of the Prior Pending Exclusion Amendment upon the effective date of the 2019, 2020, and 2021 Policies, the "otherwise provided herein" language is clearly invoked, thereby amending the Coverage Form as to "Policy Period." With the application of the Prior Pending Exclusion Amendment Nahant has met the requirement that the Claim was first made and reported during the Policy Period. All of the cases USLI cites in its discussion of the 2019 Policy's notice provision involve policies with different language and claims brought under different provisions, and are irrelevant for purposes of deciding the instant motion.

For example, *Chas. T. Main, Inc. v. Firemans Fund Ins. Co.*, 406 Mass. 862 (1990), is the first of such cases. It involved professional liability coverage for consulting engineer services in the design and construction of an extension to a power generation facility. The defendants in *Main* issued excess insurance over the primary professional liability policy issued by CNA Insurance. Both the primary and the excess insurance policies were "claims made" policies. The claim was first asserted against the plaintiff during the May 1, 1984 to May 1, 1985 period, and the insured gave notice of claim to CNA at that time, but did not give notice to the excess carriers until nearly three years later. The excess carriers denied coverage and the insured sued. The *Main* court affirmed. 406 Mass. at 865-66. There was, however, no ambiguity or other issue as to the length of the policy period because there was no amendatory endorsement changing the operative language as is present here. Accordingly, the *Main* case is inapposite since here we are dealing with a claims made policy that has been endorsed to amend the operative provision at issue--changing the definition of "Policy Period."

Although *Main* briefly mentions that a showing of prejudice by the insurer is not necessary for the insurer to deny coverage as the result of late notice under a claims made policy, *Id.* at 865-66, prejudice is not relevant to this case. Nahant's position is that it provided timely notice, given the effect of the Prior Pending Exclusion Amendment upon the 2019, 2020, and 2021 Policies. Accordingly,

12

*Gargano v. Liberty Int'l Underwriters, Inc.* 572 F.3d 45 (1st Cir. 2009) and *Berkshire-Cranwell, Ltd. Partnership v. Tokio Marine & Nichido Fire Ins. Co.,* 874 F. Supp. 2d 41 (D. Mass. 2012), both cited by USLI for the proposition that a showing of prejudice is not required for an insurer to prevail on a late notice defense, are likewise inapplicable here, as there is no need to get to an analysis of prejudice, or lack thereof, because notice was timely pursuant to the Policy as amended.

USLI claims that *Tenovsky v. Alliance Syndicate, Inc.,* 424 Mass. 678 (1997) is "analogous" to the situation presented in this case (Defendants' Memo at 8), but, again, that case did not present any policy language *endorsement* as is present in the instant case. In *Tenovsky,* an injured ironworker claimed that his worksite injury was due to G&H Steel, a subcontractor. G&H Steel was insured by Alliance Syndicate, Inc. The plaintiff gave notice during the policy period to G&H Steel, but that notice was never forwarded to Alliance, either by the plaintiff or by G&H Steel. Consequently, Alliance did not learn of the claim until one and one-half years after the expiration of the policy on the risk at the time of the plaintiff's injury. The Massachusetts Supreme Judicial Court concluded that in these circumstances, the notice to the insurer was not "prompt," as required by Alliance's policy, and concluded that there was no coverage for the same reasons stated by the court in *Chas. T. Main, supra. Id.* at 681. The *Tenovsky* court emphasized that under the Alliance policy, notice had to be given no later than 60 days after the expiration of the policy period. *Id.*

USLI then argues that *Tenovsky* governs here because, like the Alliance policy in *Tenovsky,* the 2019 Policy required notice of claim "no later than ninety (90) days after the expiration date." According to USLI this means that like the policy at issue in *Tenovsky,* the 2019 Policy "explicitly provides a timeframe for which NPT must report a claim." (Defendants' Memo at 9). Again, USLI's analysis ignores the critical point of distinction, which is that the Prior Pending Exclusion Amendment <u>amended the timeframe of the Policies.</u> Instead, USLI simply tried to argue "black-letter law" regarding plain

13

claims made provisions without any mention of the distinct amended language at issue in the Complaint. Here, when the Policies are read as a whole in light of the Prior Pending Exclusion Amendment, the plain policy language provides that Nahant has 90 days after the "continuous succession of policies without a lapse in coverage" ends, (*i.e.,* 90 days after 6/19/2022 if coverage is not renewed or is cancelled) to report a claim that arose subsequent to the effective date, which under the 2019, 2020, and 2021 Policies as amended by the Prior Pending Exclusion Amendment is 06/19/2018. Under this rational reading, Nahant gave appropriate notice under the 2021 Policy.

In other words, USLI's discussion of *Main*, *Tenovsky*, and similar cases failed to address the linchpin of Nahant's argument; that the Prior Pending Exclusion Amendment patently amends the Policy Period of each of the successive Policies that contain it. USLI does no better in the last section of Defendants' Memo, which purports to analyze the Prior Pending Exclusion Amendment, as will be seen next.

### III. USLI's Discussion Of The Prior Pending Exclusion Amendment Is Also Inapplicable To The Policies In Issue.

USLI begins its argument that the Prior Pending Exclusion Amendment does not support Nahant's claim for coverage with assertions and case law statements that fail to demonstrate any connection to Nahant's Complaint. Nahant agrees with USLI that "[i]nsurance policies should be construed as a whole without according undue emphasis to any particular part over another." (Defendants' Memo at 10 (citing *Strange v. Genesis Ins. Co.,* 556 F. Supp. 2d at 74)). But that does not make USLI's repeated assertions that Nahant is misreading the Policies true, as becomes apparent when examining USLI's arguments concerning *Federal Ins. Co. v. Raytheon,* 426 F.3d 491 (1st Cir. 2005).

At issue in *Raytheon* was whether coverage for an ERISA action, filed in May 2003 was barred by a stockholders' securities action, filed in October 1999, which alleged that the policyholder had made materially false statements about its financial performance. *Id.* at 493-94. The insurer denied liability

14

for the ERISA action, based upon an exclusion that precluded coverage " . . . based upon, arising from, or in consequence of any demand, suit or other proceeding pending, or order, decree or judgment entered against any Insured, on or prior to [September 15, 2000], or the same or any substantially similar fact, circumstance or situation underlying or alleged therein." *Id.* at 495. This exclusion apparently is the "prior or pending litigation exclusion" which USLI characterizes as serving "to prevent the stacking of insurance policies to cover separate lawsuits which arise out of a common set of facts." (Defendants' Memo at 11).

However, the Complaint is factually and legally different from *Raytheon* in almost every conceivable way. The litigation for which Nahant seeks a defense are two lawsuits arising from the same facts and that were filed 11 days apart, and have already been consolidated by the state court, as opposed to the separate securities and ERISA actions at issue in *Raytheon*. (Complaint, ¶¶19-21; *accord* Defendants' Memo, Section B, pages 4-5). The coverage dispute in this action involves, not a prior or pending litigation exclusion, but *an amendment* that deleted, and replaced, such an exclusion. (Complaint, ¶49). There is nothing in the language of the Prior Pending Exclusion Amendment that could be used "to prevent the stacking of insurance policies to cover separate lawsuits which arise out of a common set of facts," and USLI provides no enlightenment in this regard.[4]

Next, USLI asserts that this case is similar to *National Union Fire Ins. Co. v. Talcott,* 931 F. 2d 166 (1st Cir. 1991) where, supposedly, the insured's claim to coverage was based upon the insurer's

---

4    The language of the Policies, including the 2018 Policy, supports Nahant's position. The 2018 Policy contained a Full Prior Acts Coverage Provision (Complaint, Exhibit 1). The 2019, 2020, and 2021 Policies contained a "Prior or Pending Litigation" exclusion, before the Prior Pending Exclusion Amendment deleted it. The "Prior or Pending Litigation" Exclusion (replaced by the Prior Pending Exclusion Amendment) provided: "A. The Company shall not be liable to make payment for Loss or Defense Costs in connection with any Claim made against the Insured arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged: .... litigation, demand, claim, arbitration, decree, judgment, proceeding, or investigation against any Insured, which was pending on or prior to the Prior or Pending Litigation date referenced on the Policy Declarations, or any such action based on the same or essentially the same fact, circumstance, matter, situation, transaction or event underlying or alleged therein....(Complaint, Exhibits 2, 3, and 4). The Declarations page of the 2019, 2020, and 2021 Policies simply says, "PRIOR OR PENDING LITIGATION: See form DO 298". Form DO 298 contains the Prior Pending Exclusion Amendment.

15

issuance to him of "a successive series of claims made policies by the same insurer." (Defendants' Memo at 12). This contention is equally ill-founded. There was no prior or pending litigation endorsement or amendment at issue in *Talcott*, and the insured did not so argue. Instead, the insured in *Talcott* argued that the policy provided that notice of the claim must be given "as soon as practicable," an argument which the *Talcott* court rejected and which Nahant has not made in its Complaint. *See Talcott*, 931 F.2d at 168.

The only argument in *Talcott* where continuous coverage played a role was the insured's claim in that case that notice of the claim in issue was received while a second policy was on the risk. This argument was rejected by the *Talcott* court because the policy at issue required notice to be given during the same policy period in which the claim was first made. *Id.* at 169. But as Nahant explained above (*see* Section II. *supra*), Nahant's claim was first made during the same Policy Period in which it gave USLI notice--that of the 2021 Policy. This is the case because the Prior Pending Exclusion Amendment expressly changed the effective date of each Policy in the "continuous succession of policies without a lapse in coverage" to the effective date of the first Policy in the series: 06/19/2018. Because of this language in the Prior Pending Exclusion Amendment, the claim against Nahant was first made during the Policy Period of the 2021 Policy as it was subsequent to 06/19/2018 and prior to 06/19/2022, and Nahant's reporting of that claim on July 27, 2021, was timely as it was also within the Policy Period.

Similarly, *Jalbert v. Zurich Services Corp.*, 953 F.3d 143 (1st Cir. 2020) and *Mount Vernon Fire Ins. Co. v. VisionAid, Inc.*, 91 F. Supp. 3d 66 (D. Mass. 2015) also have no connection with the policy language at issue in this case. In *Jalbert*, the policyholder sought coverage for a claim based upon the issuance of an SEC order. The excess insurer argued that the date of the SEC order counted as the date on which claim was first made, subject to a "Deemed Made" clause in the excess policy, and the First Circuit agreed. 953 F.3d at 149. These are very different circumstances than those at issue in this case.

Here, there is no dispute about the date the claim in issue was first made; the issue is about the effect of the Prior Pending Exclusion Amendment upon the effective date--and thus the Policy Period--of the 2019, 2020 and 2021 Policies. In the context of *Jalbert,* where the insurer argued that the claim could not be "deemed made" until it was certain that the policyholder would be investigated, the court's remark that the excess insurer was trying to "rewrite" the policy makes sense, but it is inapplicable here. *VisionAid* has even less relevance here. The coverage issue in *VisionAid* was whether the policyholder was entitled to have the insurer prosecute a counterclaim for misappropriation of funds asserted against the policyholder in an employment discrimination suit that the insurer was defending. The district court rejected the policyholder's case law arguments as well as the policyholder's claim that the misappropriation claim and the employment discrimination claim were "inextricably intertwined." 93 F. Supp. 3d at 72-73. USLI has shown no connection between the Court's statement in *VisionAid* that ordering the insurer to fund the counterclaim would "fundamentally rewrite the Policy" and the issues presented by both Nahant and USLI here.

Further, USLI's argument that "… it is wholly immaterial in the instant matter that USLI continually insured NPT under the Policies" (Defendants' Memo at 13) is contradicted by USLI's own argument *supra* that insurance policies must be construed as a whole, citing *Strange v. Genesis Ins. Co.,* 556 F. Supp. 2d at 74. If USLI is to be believed, then they are arguing that the language in the Prior Pending Exclusion Amendment should be rendered superfluous, which conflicts with established case law. According to *Strange*, every policy provision must be considered within the context of the whole policy, but USLI fails to present any interpretation of this provision that is reasonable when interpreting the Policies as a whole, and in fact fails to explain why the Prior Pending Exclusion Amendment language is in the Policies at all. The wording of the endorsement says, "…the effective date of this Policy will mean the effective date of the first Policy issued by the Company in such succession of Policies." A

reasonable reading of this language changes the effective date of the Policies in question; USLI's claim that the language relates to stacking of limits of liability makes no sense, and USLI has failed to present any interpretation of this provision that is reasonable when interpreting the Policies as a whole. Moreover, the Prior Pending Exclusion Amendment is clearly "susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one." *Citation Ins. Co. v. Gomez*, 426 Mass. 379, 381 (1998). Accordingly, the Complaint contains sufficient factual matters, when accepted as true for purposes of surviving a motion to dismiss, and clearly states a claim for coverage that is "plausible on its face." *Ashcroft v. Iqbal, supra,* at 556 U.S. 661, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S 544, 570 (2007)).

Lastly, if anyone involved with this lawsuit is trying to "rewrite" the USLI Policies issued to Nahant, that party is USLI itself--by ignoring the plain language of the Prior Pending Exclusion Amendment it unilaterally wrote without providing this Court with a coherent counterargument as to what that language might mean other than Nahant's rational reading. If, as Nahant has shown, the Prior Pending Exclusion Amendment is plain and clear, and changes the effective date of the 2019, 2020, and 2021 Policies, USLI's Motion to dismiss must be denied, and that assessment must be made giving Nahant the benefit of all reasonable inferences. On the other hand, if the Prior Pending Exclusion Amendment is ambiguous, controlling case law in this Circuit still requires this Court to deny USLI's Motion. As set forth above, the Complaint clearly states a *prima facie* case for coverage under the *Ashcroft* standard. Accordingly, USLI's Motion to Dismiss must be denied.

## REQUEST FOR ORAL ARGUMENT

Nahant hereby requests oral argument in this matter.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that USLI's Motion to Dismiss be denied with prejudice.

                                            Respectfully submitted,

                                            Nahant Preservation Trust, Inc. and
the Individual Plaintiffs identified above

                                            By their attorney,

                                            /s/ John D. Frumer
John D. Frumer, BBO# 546695
Law Office of John D. Frumer
199 Wells Avenue, Suite 301
Newton, MA 02459
Tel: (617) 233-9147

Date: May 13, 2022.                         jdfrumer@frumerlaw.com

## **CERTIFICATE OF SERVICE**

I, John D. Frumer, hereby certify that I have on May 13, 2022 served a copy of the foregoing document via electronic mail upon the following:

Scarlett M. Rajbanshi, Esq.
Lincoln A. Rose, Esq.
Peabody & Arnold LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210

                                          */s/ John D. Frumer*

John D. Frumer